The first case of the morning, call 209-805, Hans Weissner, et al. v. Timothy R. Fitzgerald, et al. On behalf of the appellant, Ms. Jodi Bielke. On behalf of the appellee, Mr. Joe Cotari. Good morning, counsel. Good morning. And it's Ms. Bielke. Okay, you may begin. May it please the court. My name is Jodi Bielke. I am for the appellant, Hans Weissner, DBA, Hans Weissner, builders. I'm going to ask you to speak a lot louder, please. We've got a fan on the ceiling that makes it hard to hear sometimes, even though we have microphones. Okay. So please keep your voice up. Jodi Bielke for the appellant, Hans Weissner, DBA, Hans Weissner, builders. Excuse me, I don't think the microphones are on. You know what, they're not. Testing. It's not making any noise. All right. Wait one minute. We'll give you obviously the appropriate time, even if the timer goes off. Your opponent has to be able to hear you as well as the people in the back, and we do too. Sorry. Pardon? They're working. They are working. Okay. So just speak a little louder. Okay. Maybe it's the fan. Would the court like a brief recitation of the facts of this case?  Okay. We've all read the facts. Okay. The court has been presented with and had a chance to review the briefs that have been submitted both by myself and by opposing counsel. And since that time, there have been some rulings handed down from both the 2nd District, the 3rd District, and the 4th District, interpreting the Home Repair Remodeling Act and applying it in different situations. Pursuant to the notice that we received from the court for today's oral argument, I know three of those cases were specifically mentioned and asked for us to address today. There is a fourth case that was handed down from the 4th District, also interpreting the act that I may address if I have appropriate time after addressing the prior three. The first case that comes down in a chronological order was handed down in September of 2009 from the 2nd District. That was the Artisan Design Building v. Bilstrom. Does the court need copies of the case because I do have those with? No. Thank you. In this case, the contractor had a written contract with the homeowner but failed to provide the homeowner with a consumer brochure. The case was dismissed from the trial level due to violations of the Home Repair Remodeling Act by not providing that brochure to the homeowner. It was subsequently appealed to the 2nd District. After reviewing the facts of the case and argument from counsel, the court held that failure to provide the brochure did not vitiate the contractor's right to recover in equity or law, but if certain requirements were met, the violation could give rise to cause of action under the Consumer Fraud Statutes for the homeowner himself, essentially allowing the homeowner to prove damages, if any, that were approximately caused by the contractor's failure to provide the brochure. This case is similar in the extent that the contractor did fail to provide the pamphlet or brochure to the homeowner. In addition, he also did fail to obtain a written contract. Argument can be made that the statute provides both in the section regarding the pamphlet or brochure and the section requiring a written contract that the language is mandatory in the sense that it says shall. However, in this case, in dealing with the brochure, the court did find that even if the contractor failed to provide the brochure, it did not preclude him from recovering in equity or law. We believe the same argument can be made in the sense for the written contract in that the Home Repair Remodeling Act provides for the homeowner to have a cause of action under the Consumer Fraud Statutes for any sort of violation relating to the Home Repair Remodeling Act. We believe that that is the sole remedy provided for the homeowner under this Act. Any violation or penalties from violation of the Home Repair Remodeling Act itself are given to the Attorney General and the State's Attorney under Section 35 of the Act, which does relate back to another case that this court had asked us to address, which was Fandel v. Allen, a third district court case that was handed down in January of 2010. That case was similar in the sense that no consumer brochure was provided to the homeowner. However, in this case, there also was no signed contract, so the facts are a lot more similar to the present case before the court. That court looked at the plain and ordinary meaning of the language of the statute and in doing so determined that the legislative purpose was to empower the Attorney General and the State's Attorney to correct potential harmful practices for violations of the Home Repair Remodeling Act, not to deny the honest and competent workman or contractor the fair value of his work, nor to give the homeowner a valuable benefit without them having to pay for it. In essence, the court was saying that the homeowner must use the Consumer Fraud Statutes to show that they suffered actual damage as approximate results of the contractor's deficiency in either failing to obtain a written contract or in failing to provide the consumer rights pamphlet. So your position is that the procedural defaults, if you will, are remedies that those remedies under the Home Repair Act are available to the Attorney General and not to the homeowner, if you will? We believe that penalties relating directly to the Home Repair Remodeling Act is something that the Attorney General and State's Attorney have been given the authority to pursue, in essence because the policy behind the Home Repair Remodeling Act in itself is to protect the public interest, to protect those homeowners who are being solicited by door-to-door salesmen or those contractors looking for work. And so the Attorney General and State's Attorneys can then penalize them for violations of the Act if they don't comply. I believe that a homeowner's cause of action would lie under Consumer Fraud and Deceptive Business Practices Act in the essence that they must be able to show that the damages that they've incurred were directly or approximately related to the contractor's failure to abide by the terms of the Home Repair Remodeling Act. In essence, both the Artisan case and the Fandel v. Allen cases determine that the intent of the legislator was not to allow a consumer to enjoy, essentially to enjoy the fruits of a contractor without having to pay for them. And in essence, there's an argument to be made that if the court was to say that a contractor's violation of the Home Repair Remodeling Act in essence meant that the homeowner didn't have to pay him anything, in cases like this, it would be saying where the contractor had been paid a substantial portion of what the claim was that he would have to turn around and refund the homeowner even though the work had been completed and the homeowner had benefited by whatever remodeling had been done, whatever renovations had been done, and whatever improvements had been done to the property itself. I know that the 3rd District, in addition to the Fandel v. Allen case, one week prior to that case had handed down Roberts v. Atkins, a little bit of a total opposite decision from the 3rd District in the sense that in that case there also was no written contract and no consumer rights brochure. The trial court determined that the Home Repair Remodeling Act did not apply, it was appealed, and the appellate court reversed, determining that to foreclose a mechanic's lien, there must be a valid contract. And since the Home Repair Remodeling Act clearly and unambiguously requires a signed contract, that in that case there was not a valid contract because of the contractor's violation of the act and therefore he did not have a right to foreclose on his mechanic's lien. That was Justice Litton who wrote the dissent in the Allen case, correct? Correct. And that's in the Fandel v. Allen case. They do deal with the mechanic's lien issue and the determination of a valid contract. The mechanic's lien act derives from a contractor's performance of work relating to a homeowner's house, and violation of the Home Repair Remodeling Act does not invalidate an agreement that is enforceable, is what the Allen court held. Now, they also cited cases where they've determined that if an agreement can be by its terms performed lawfully, it will be treated as legal, even if performed in an illegal manner. So in essence, what the court was saying at that point was that if an agreement can be performed lawfully, so in essence an agreement to perform remodeling work or improvements on house, it will be treated legal even if it subsequently is performed illegally. Now, in this case, they determined that there was a valid oral agreement between the parties, even though there was not a written contract, because they determined there was offer, acceptance, and consideration based on the facts that the homeowner sought out the contractor to do the work. The parties had had extensive discussions regarding what was to be done to the house. There were discussions about what the costs were going to be. And the court in Fandel determined that the legislator could not have intended to repeal the mechanic's lien act by allowing Home Repair Modeling Act violations to be affirmative defenses. Rather, they believe that the contractor is entitled to pursue under that mechanic's lien act claim and still must prove faithful performance of the contract or the agreement that the parties had had for the work to be completed. When would the Home Repair Act be meaningful? And when would it apply? Would it apply only to the salesman that knocks on your door, a contractor that knocks on your door and says, could I repair your furnace and does a bum job and charges $1,200? No, I believe it would apply in situations similar to that one, but also in situations where a contractor may have been solicited to do work but may have held himself out to be licensed or insured and may not be, or situations where he says I can do that project when, in essence, he doesn't have the ability or the expertise to complete those projects. I believe that the act is meant to protect those homeowners that don't have enough knowledge regarding a contractor's ability. And I believe this case is drastically different in the essence that the contractor, in this case the appellant, had done work with the Anderson family for 20 years. And Ms. Fitzgerald, one of the appellees, is the daughter of the Anderson family, and they sought out this contractor, the appellant, to do this work. They asked him to do the work they'd done work with him in the past and never had had a written contract. If the unlicensed contractor built an addition, did a good job, and increased the value of the home $100,000, should he be able to recover? Should the contractor be able to recover? Because under your description, he wouldn't be able to recover. I believe with issues of insurance and licensing, I believe there are different problems that the contractor would face in addition to anything he may face under the Home Repair Remodeling Act. But I think it all comes back again to the fact that under Section 35 of the Home Repair Remodeling Act, it provides the Attorney General and State's Attorney with the opportunity to pursue any sort of remedy or any sort of penalty for violation of the act. And that's in the situation where a contractor is not licensed or fails to have insurance. Do you think, are you familiar with Section 2C of the Consumer Act, Consumer Fraud Act, and the number of businesses that are enumerated in that section? There must be 40 or 50. Right. Do you think the Attorney General could enforce just even one hundredth of those complaints that arise under that section? I don't believe so. I think both the Attorney General and State's Attorney are overwhelmed with their caseload and the things that come before them anyway, and that this act may impose upon them an additional requirement or additional responsibility that they probably don't have time for. But I feel that the act provides for that remedy as well as a remedy for the homeowner to assert a consumer fraud action against the contractor if they sustain damage in some form or fashion to prove that their damages were a proximate result of the contractor's failure to provide a written contract or provide the consumer rights brochure. One additional case that I did come across was handed down by the Fourth District in December of 2009. It's Bell v. Gingrich. I have copies of that case for the Court if needed. I'm going to give those to the clerk, please. Thank you. When was that decided? December 21st of 2009. This case handed down by the Fourth District is similar in the facts in the sense that the contractor did not have a signed written contract with the homeowner and did not provide the consumer rights brochure. This Court looked at the mandatory language in both the written contract section as well as the consumer rights section regarding shall being the mandatory language and did address the fact that although it is mandatory language, it does not require strict compliance, but that substantial compliance with the act would be sufficient to provide for the contractor's recovery. In doing this analysis, the Court did do a two-prong approach in which they looked at the act itself and determined whether the purpose of the act was achieved without strict compliance, and then the second prong was whether or not there was prejudice to the homeowner. When looking at the first prong to determine whether the purpose of the act was achieved without strict compliance, the Court did find in that case that the contractor did substantially comply with the Home Repair and Modeling Act in the sense that, again, the homeowner had contacted the contractor to do the work. The parties had worked together for years before, were both in the same trade, and understood what work was required and understood the fact that as work was done, cost may increase, labor may increase as well. The parties had negotiated the scope and payments were made. So the Court determined there was substantial compliance. As far as prejudice to the homeowner, the Court determined that there was not prejudice because the homeowner had not been defrauded. Mere dissatisfaction with the work or contesting the amount claimed due does not constitute deceptive practices. And again, the Court acknowledged that the Home Repair and Modeling Act was intended to protect homeowners from being approached by dishonest individuals similar to a predator-prey situation where a contractor could find an unknowing homeowner and convince them that they needed $50,000 worth of work done without providing them with the proper rights and remedies. Isn't it correct that the legislature must express its intent to abrogate the common law? I mean, it has to be expressed clearly when the legislature acts and intends to change something that the common law has established. And do you think the legislature expressed in any way in the Home Repair and Remodeling Act its intent to do away with the common law right to equitable recovery? I do not believe so, and I did address that in my initial brief to this Court. I believe that even if this Court was to determine that legal remedies were not available, that the legislator nowhere really said that a breach of contract claim or foreclosure on a mechanic's lien claim were not allowed. However, it does not specifically say that quantum merit or unjust enrichment should be precluded and that a contractor cannot recover at all, even for violations of the Home Repair and Modeling Act. And that cites back to the K. Miller Construction Company v. McGinnis case decided by the 1st District in 2009. Any questions? Okay, you'll have additional time on rebuttal. Okay, thank you. Mr. Guttawi? I didn't pronounce your name correctly. Hugh Terry. Hugh Terry, thank you. Good morning. Good morning. May it please the Court. My name is Joel Hugh Terry, and I represent the defendants, the homeowners in this case, Ryan and Tracy Fitzgerald. Now, I won't go into the facts because you're all familiar with that. If you can clear up some facts for me. Hugh Terry's engaged in some type of agreement with the contractor to do some repair work or some work at their home, correct? Orally, that's right. Orally. And how much was the contractor, how much did they want to agree to pay him? It was ultimately around $180,000. And how much did they pay him? Around $150,000. Okay. So your position in your briefs is that the contract is basically void because he did not comply with the Home Repair Act, if you will. And, therefore, since the contract was void, then they didn't owe him the rest of the money because the contract was void, number one, because it wasn't in writing, and number two, because they didn't get the pamphlet, correct? That's correct. So then why don't we just give $150,000 back since the contract was void? Well, I do believe that that would be inequitable. I believe that when a homeowner makes a payment under an unlawful contract, they waive any right to demand a refund of that money when they later assert the Home Repair and Remodeling Act as an affirmative defense. So then the rules of equity would apply to the homeowners but they won't apply to the contractor? Oh, no, that's absolutely not the case. So then you think the contractor has a right to pursue under the Mechanical Mean Act? No, I don't. And why not? I don't because the oral contract for home repair is unlawful. It's illegal. You can't do it in Illinois. That is a clear black and white expression of the legislative intent to bar that conduct from taking place between that group of contractors, that business, and the consuming public in Illinois. But doesn't your client waive the ability to raise that defense, if you will, when your client enters into a contract? I mean, there was an offer, there was an acceptance, there was consideration. I think to the extent that the homeowner and the contractor are making progress toward the resolution of the contract and payments are being made, to the extent that that's taking place, they do waive a right to assert the Home Repair and Remodeling Act as an affirmative defense. But there's no need to raise the Home Repair and Remodeling Act at that point because there's no dispute as to the terms of that oral contract yet. The parties are cooperating. The job is getting done. Services are being rendered. Money is being paid. But then they have a falling out. Suddenly the roof is leaking or the windows are leaking. The job's not going as planned. The homeowner says, I'm going to assert my right to stop payment. At that point, they're at issue. So that's equitable? That's fair? Absolutely. Okay, so is that what the intent of the legislature was with respect to the Home Repair and Remodeling Act? I believe so. It says it is unlawful to have an oral contract in this manner. But then it says who has the right to pursue under the Act? With respect to the State's Attorney's and Attorney General's Office pursuing consumer fraud, with respect, I don't believe that that is the exclusive remedy under the Act because the State's Attorney General's Office and the State's Attorney already have the right to prosecute consumer fraud cases. And doesn't your client have other remedies as well, other than the Home Repair and Remodeling Act? Sure. To pursue? Absolutely. So the State's Attorney already has remedies to pursue. Your client has remedies to pursue. Why is your client, under the intent of the legislature, entitled to raise this defense now, if you will? Because, notice, the homeowner, the consumer, isn't the one out there affirmatively pursuing litigation. It's the wrongful contractor who broke the law. They're the ones who are filing the suits suing the consumer, the homeowners. They're the ones who have to be affirmatively stopped from gaining the benefit of their illegal bargains. It is unlawful to contract with a homeowner if it's not in writing and a signed contract pursuant to the Home Repair and Remodeling Act. Well, isn't your client contracting? Isn't your client choosing or electing to contract with somebody who's breaking the law? So your client has unclean hands, too, correct? No, they don't, because the homeowners aren't the ones that the legislature enacted the Home Repair and Remodeling Act to control and to regulate. It is the people in the building construction industry that are regulated by this act, which was passed pursuant to the police powers of the state to regulate the welfare and safety of homeowners and consumers. Dishonest contractors, if you will. Absolutely. And it's only enacted because of the history of dishonest fly-by-night contractors and that sort of thing. But as Justice Bowman raised, that is not the only group of contractors that are regulated. The act speaks broadly of all contractors engaged in the business of home repair and remodeling, and that was in your opinion in Artisan Design. So respectfully, I would just like to briefly address a few of the points that were raised at the opening by Ms. Bilkey. She mentioned that the state's attorney and attorney general are empowered to prosecute contractors under the act. Well, they are, but they already have that power. They don't need another statutory enactment of rights and responsibilities they already have. Furthermore, it says that they may enforce the law against contractors under consumer fraud. It doesn't say that they shall or they must. It says if they may with their ever-growing dockets, they can get around to it if they want to. That's hardly a strong protection on behalf of consumers, which is what the Home Repair and Remodeling Act was intended to be. With respect to the threat that a homeowner such as my clients would demand repayment of any payments that they had made prior to the falling out, which we discussed briefly, as I said, any payments made up to the point of the falling out between the parties should be considered waived by the homeowners. Because up until then, they were getting services, good consideration, so to speak, for their oral contract. But at which point there is a falling out and they say, I'm putting my foot down. I'm not going to pay you anymore. At that point, they seek counsel. They learn about the Home Repair and Remodeling Act. They have a chance to assert it if they get sued by the contractor. Well, they had that right under, if you assume that a contract existed, either oral or written, the homeowner could always stop payment knowing that the builder is probably going to file a lawsuit and a lien. That's right. And if it's a responsible, law-abiding contractor, all they have to do before they lift another hammer and drive another nail is say, here's a written contract. I'd like you to sign it so I can comply with the law and cover myself so that to the extent I do any more work for you, I'm going to be able to collect. All right. So you have a contractor. He comes in. He doesn't have a contract in writing. He didn't give the pamphlet. The client, the homeowner says, yeah, build that deck for me. So he builds a deck. They pay maybe $100 up front for materials. He builds a deck. And then in the middle, they're at dinner with some lawyer. And the lawyer said, hey, did you get a contract? Did you get a pamphlet? No. Then you don't have to pay them. So they go home, their deck is done, and the contractor says, okay, I'd like my payment for my deck. Well, I'm not going to pay you. You didn't give me a pamphlet and you didn't give me a contract. I'm done. With respect, contractors, like all citizens, are charged with knowing the laws that regulate their industry. If they're going to operate in Illinois, they need to know what laws regulate their profession. If they're going to perform home repair and remodeling, they need to operate legally under the Home Repair and Remodeling Act. And so the fact that they don't react or don't prepare themselves legally under the act, all the work that they've done, after some lawyer advises them of their rights, they don't have to pay, and they're out their money. It's just as if you and I contracted to, if I was going to sell you some lakefront real estate, and we orally contracted for that sale of real estate, and later I backed out at the last minute, you wouldn't have the right to pursue me because that kind of contract is unlawful, pursuant to the statute of frauds. It's the same thing for the sale of real estate, just moved over to the improvement of real estate. But isn't there a common law right to recovery here, and where is the legislature expressed in the Home Repair and Remodeling Act its desire to abrogate that common law right? I don't think they could have been much clearer. When they said in Section 30 it is unlawful, illegal, to orally contract for home repair in excess of $1,000, that, if you read the case I cited in my brief that goes back hundreds and hundreds of years, when a legislature declares something to be unlawful, you cannot then contract for that unlawful activity and expect a court to enforce your rights under that illegal contract. But the act goes on to say that this conduct is unlawful but is not exclusive, nor meant to limit other kinds of methods, acts, or practices that may be unfair or deceptive. And did you notice at all the attempt by the legislature to amend the statute? I did. I think that that actually supports my claim that to the extent the construction lobby has gone down to Springfield and said we've got a real problem here, our contractors are getting dinged all the time because they're breaking the law. We want you to do something about it. That shows that the statute as written, as we're arguing about it, is significantly pro-consumer, pro-homeowner. That's actually strong support for my argument that the way it's written supports the homeowner's claims in this case. Or you can interpret it the opposite, that it's been unfair to the contractors and the contractors are saying, wait a minute, the homeowners have an unfair advantage here. You're saying they can't even pursue quantum heroin because you have an illegal contract. Absolutely. Absolutely. And that's what the court said in Smith v. Bogart, which I hope you'll adopt. I think that they got it right. With respect to the equitable remedies, the McGinnis opinion goes to great pains to distinguish equitable relief under the Act and legal relief. It's pretty clear that legal relief, such as for a breach of contract claim, enforcement of a mechanics lien, you can't get any of that if you violated the Act. And that's affirmed in case after case until Fandel, which I believe is a rogue decision, which I'll address in a moment. But Smith v. Bogart, McGinnis, and the case out of the third district, Slepian, they all clearly held that you cannot enforce a breach of contract claim or foreclose upon mechanics lien if you didn't have a contract in writing. That's clear as day. Then with respect to equitable relief, quantum heroin and just enrichment, that's a dispute between essentially two cases who really address it. It's the case of Smith v. Bogart and the case of McGinnis. Now, as I said, Smith v. Bogart is on all fours with our case. It's almost a spitting image. That case, the trial court threw out all counts, legal counts, equitable counts, said you can't do it, you violated the Act, you didn't give a written contract, no recovery. The appellate court affirmed them, said it would violate the policy of this state if you were to allow any kind of recovery for a contractor who broke the law. McGinnis splits a hair. McGinnis says, okay, we agree the Act unambiguously bars legal claim, breach of contract, foreclosure of mechanics liens. But that same crystal clear language is somehow ambiguous when it comes to equitable relief. Now, that doesn't make a bit of sense to me because the Act doesn't speak to either legal relief or equitable relief. How can the same language that doesn't address either subject at once be ambiguous and at the same time clear as day? That, I believe, is the reason why Fandel goes through these gymnastics to try to get around this issue because it's pretty clear to me that McGinnis is not going to stand up. Well, Fandel basically says if you lay in wait, lay in the weeds, if you will, as a homeowner who's getting improvements done, let everything get done, and then you wave the flag and say, oh, no, you didn't give me a contract and you didn't give me a pamphlet, they don't have to pay, according to you and according to the dissent in Fandel, correct? Well, that's right, but it's not as though there are no red flags to the contractor that they should pause and reevaluate their situation. How about if they're all done? Well, if they're all done, then they've been operating illegally throughout the entire term of the contract. And you think that's what the intent of the legislature with respect to this Act was put into place for? Absolutely. I believe the intent of the legislature was to bar contractors from recovering on illegal contracts. If something is unlawful, you cannot have an unlawful contract, an illegal contract, be the basis of your claim for compensation and have the courts enforce it. Don't you think the Act was intended to eliminate dishonest contractors? Yes. So you think a contractor who in a good, honest hard work's day does his job honestly and does a good job and then the homeowner finds out about this Home Repair Remodeling Act and no pamphlet that they have a right to say I'm not going to pay you. So you're saying an honest, hardworking contractor is not an honest, hardworking contractor if he didn't operate under a written contract. Absolutely not. And I know exactly the situation you're concerned about. It was the same situation that was of concern in the Guinness. If you've got somebody who's savvy, in that case it was a real estate attorney, who took advantage, it seems, of a hardworking, honest contractor who was willing to bankroll the work, a half a million dollar job, the suggestion in that case is that that real estate attorney knew all along about the Home Repair and Remodeling Act and used it as a sword rather than a shield in order to get the benefit of this guy's work improperly. In that situation, the courts still have another option. They don't have to rip off the contractor in that case because the plaintiff need merely plead an additional account for equitable estoppel. And equitable estoppel provides if that contractor intended to defraud, excuse me, if that homeowner intended to defraud that contractor up front and said, oh, I'm going to perform an oral contract, I'm going to pull one over on him, I'm going to get this huge addition, I'm not going to pay a dime, then the court in equity can say, oh, no, you don't. They've pled equitable estoppel. You can't do that. We're not going to let you get away with it. Well, McGinnis said you can use quantum narrowing, basically. And so why wouldn't any contractor have the ability to use quantum narrowing? Because as in the case I said in my brief, it is long, I mean, I said a case going back to England in 1775. If it's unlawful, you can't recover, whether it's in law or in equity. It's illegal. You shouldn't get the benefit of an illegal bargain. That's the problem. That's why you shouldn't go to quantum narrowing. And you should still, you can maintain the court's powers in equity to make sure that justice is done at the end of the day, but you shouldn't do that in a way that guts the Home Impairment Remodeling Act. You should use equitable estoppel, not quantum narrowing. What happens in this situation, you have a signed work order, and that's all you have, and you fail to give the pamphlet. What happens in that circumstance? Well, I think the homeowner loses in that case because the section of the Home Impairment Remodeling Act that declares certain conduct to be unlawful is not the section that requires the pamphlet, and that was the subject of the artisan design case, which I think clearly destroys my client's right to pursue an affirmative defense based on the act to the extent the contractor failed to provide that pamphlet. I agree with that. I think it's a well-reasoned decision. I've got no beef with that. But that's only because the section requiring the pamphlet is, I believe, Section 20. The section that says it is unlawful to orally contract for home repair, that's Section 30. So I think that there's a significant distinction there that the court should keep in mind. And I know I'm out of time. We have another point or two to make. Go ahead. Thank you very much. I appreciate it. The Fandel case was particularly troublesome because when I was anticipating coming here and speaking to you today, I almost expected I could convince opposing counsel to basically stipulate that any right to breach a contract or enforcement of a mechanics lien is pretty much a foreclosed issue based upon Smith v. Bogard and McGinnis and Slepian. And the other case that you brought to our attention, which is the Adkins case out of the 3rd District. What I can't understand is why just a week after Adkins, the 3rd District issued its opinion in Fandel because Fandel and Adkins are diametrically opposed on the issue. And I just want to point out to you that Fandel is factually distinct from this case because there was a written contract provided by the contractor in Fandel. The only problem was it wasn't signed. And that's the kind of non-substantial flaw that I think the courts are willing to overlook and should be willing to overlook. But doesn't the statute say a signed contract? If you're going specifically by the statute and you say it's clear, the intent is clear in the legislature, it says a signed contract. That's right. But, you know, as opposing counsel pointed out, in the case that she just tendered to you today, Gengrich, the unsigned work order, the court's willing to overlook that. And I don't think that that's a problem because it's a kind of nitpicking detail that really doesn't go to the heart of the Homeowner Parent Modeling Act. All we really want is you to uphold the requirement that if you're going to have a deal with a contractor as a homeowner, they have an obligation to give you a written contract. And that's not too much to ask. Did the legislature intend for a fly-by-night contractor, somebody who's out to stick people in construction work, getting their signed work order or a contract, hand the person the pamphlet and totally escape the Home Builders Repair Act? Well, that's an interesting question. I think that the homeowner probably would not be able to raise the Home Repair and Remodeling Act as an affirmative defense if the fly-by-night contractor complied with all of its requirements and then still made off of their money. I think the homeowner would have other claims, breach of contract, for example. But at least in that case, they'd have some evidence. They could say, look, I've got a written contract here. This fly-by-night contractor, he gave me this contract, and I'm going to sue on it. Doesn't the homeowner have other remedies in any event? Sure. So I still ask you then, how is it, especially with respect to the intent of the legislature, how is it that you believe that the legislature intended that if you didn't have a signed written contract and a work order, then you just raise this affirmative defense and you don't have to pay? There's no other remedies as far as you're concerned? No other remedies for the homeowner? Yes. Well, I imagine there are other remedies, but here's the thing. If you're a homeowner and you're getting sued by a contractor, are you going to want to go out and start litigating on another front and paying attorney's fees to address the same contract? Or would you rather say the law is on my side, all I have to do is raise a defense and say they broke the law. I don't have to do anything. I don't need to hire a lawyer. I don't need to pay his fees. I don't need to deal with months of litigation. The law in Illinois takes care of homeowners. I'm going to cite that act, and I'm going to get out of this. And I'm not going to claim reimbursement for what I did pay, because I paid that in good faith, and he did that much work. But once he stops showing up, once my roof started leaking, I'm not going to pay a dime for that, and I don't have to because of the Home Impairment Model Act. Well, except as we noted, that may not be the law if the governor signs this very shortly. We have an alternative. Right. Anyway. Okay. Thank you, Counsel. Ms. Bielke. May it please the Court. When opposing counsel came before you, the first question that was asked of him was regarding this oral agreement that was between the parties in this instant case. He admits to the fact that the parties did have an oral agreement for the amount of about $183,000. He admitted to the fact that the homeowners did, in fact, pay the contractor the sum of approximately $143,000 and that the remaining balance of approximately $38,000 is all that remains and was filed under the mechanics lien and the action to foreclose the mechanics lien and for breach of contract. However, then counsel tries to bring in the Home Repair Modeling Act saying that this agreement was unlawful and therefore they don't have to pay the balance due. However, under the Fandel v. Allen case that we've addressed and discussed and extents today, they state that violation of the Home Repair Modeling Act does not invalidate an agreement otherwise enforceable. Essentially, counsel has just admitted to the fact that there was an agreement between these parties, yet now is attempting to get out of that agreement and not have to pay the full amount that was originally agreed on between the parties because of procedural or technical violations on part of the contractor for not obtaining the written contract. The amount has not changed in this case. There was no additional work done that increased the amount that the parties had originally agreed on. They agreed to this amount. The homeowners paid a substantial portion of this amount. But now they're attempting to assert the Home Repair Modeling Act payment of the remaining amounts. They're not saying that there was any fraud. They're not saying that the contractor did anything wrong. There may be claims that the work wasn't good or that they're dissatisfied with some condition of the repair work that was completed. However, we don't know that because we haven't gotten to any evidence. The case was dismissed in the trial court before any of that was ever brought to light. So I believe, in essence, that although the opposing counsel is attempting to say that the contract is unlawful, therefore illegal, therefore void, non-existent, and that there is no right to recover under that, I believe that both the case law and the statute itself provide that this agreement was enforceable in the beginning and that the violations of the Home Repair Modeling Act does not necessarily invalidate or void that agreement. Specifically, as Section 30 cites, even if the conduct is considered unlawful, it's not exclusive and it does not prevent remedies under deceptive practices and Consumer Fraud Act. In addition to those arguments made by opposing counsel, he also addressed basically the statute being there to protect homeowners and be a pro-homeowner statute. Well, as this court cited in Artisan v. Billstrom and as other cases have cited in recent years, the Home Repair Modeling Act was designed to protect the disadvantaged, not to serve as a trap for the unwary. As in the Artisan case, the contractor was a Wisconsin contractor. The court felt that he was a Wisconsin contractor, holding him responsible to understand the no Illinois law. Should he, if he's contracting in the state of Illinois, know what the law is? Most definitely. However, in cases like that where the parties have discussed and there's been so much detail put into working out an agreement between the parties and there is an agreement of some form or fashion between the parties, to then allow the homeowners to say that that contract is unenforceable, it's not equitable to the contractor. So now we've all of a sudden shifted everything. So instead of it being allegedly inequitable to the homeowners or disadvantageous to the homeowners, we're essentially making things inequitable and disadvantageous to the contractors. Are you aware of the amendment to the Home Repair Act? I have not seen the specific language for the amendment itself. Counsel cites several cases dating back to 1775, I believe is what he mentioned, wherein the courts have talked about That's when there were snake oil salesmen, so they needed those. Right. However, I believe that the new cases that keep coming out, as things are progressing, there tends to be more interpretation of the Home Repair Remodeling Act as protecting those that are disadvantaged or those homeowners that are not aware of what's going on or don't understand the complications or the issues that may arise with the contractor. Whereas, I don't believe it. I believe this case is just factually so distinguishable because of the relationship between the parties. Am I saying the Fitzgeralds are skilled contractors? No, probably not. However, their family has had several projects completed by my client, so they are well aware of the work that he did, the type of work he did, what his process was for obtaining subcontractors and doing things like that. So I don't believe that the Home Repair Remodeling Act was meant to stop a contractor who has a longstanding relationship with a homeowner from recovering amounts due, especially when there was a valid oral agreement between the parties, being offered acceptance and consideration. And that's why we believe that the contractor appellant in this case is entitled to pursue his remedies, whether it be to foreclose his mechanics lien breach of contract claim or under his equitable claims for unjust enrichment or quantum error. Let me just clarify. I'm asking you to clarify for us. What is it that you are asking? What remedy are you asking this court? To reverse and remand? To proceed? Are you asking us to make a determination with respect to the work? What is it that you're asking us? The matter was before the trial court. An amended complaint was filed, motion to dismiss. So no evidence has been presented as far as quality of work in that fashion. It was dismissed from the trial court based solely on the alleged violations of the Home Repair Remodeling Act. We're asking that it be remanded to the trial court and that the contractor be allowed to seek recovery under any and all theories available to him, both his legal and equitable theories, and then allow the trial court to obtain evidence and review testimony of the parties if there are any issues regarding work quality and things like that. Thank you. Just in general, your position is the only time the homeowner is asked to apply is if you have to look at the facts, either the person, the homeowner, is disadvantaged or has some type of disability, or you could look at the builder and if he has some fraudulent intent, then the act would apply. Is that pretty much your view of how the act applies? That was the intent of the legislature? I believe... If you look at both parties and find something wrong with either party, then the act applies. If you don't, then even though you don't have, if you have an oral contract... I believe those are... If you don't have an oral contract, it doesn't matter. I believe those are the two extremes of what the legislator's intent was, and I believe the cases that have come down from the various districts since the act has been applied to various cases have begun to realize that based on factual differences, there may be avenues or cases where a contractor may be entitled to pursue his legal and equitable, there may be situations where maybe he's just entitled to equitable, maybe he's not entitled to anything, but I don't believe the Home Repair Remodeling Act is the homeowner's proper avenue to pursue against the contractor. I believe then they would have a consumer fraud action against the contractor. That remedy is for the state's attorney, in your opinion, or Attorney General. Correct. Thank you, Counsel. Thank you. At this time, the Court will take the matter under advisement and render a decision in due course. Court stands in brief recess.